Leonard **PHILLIPS**, Appellant

v.

**AMERICAN ELASTOMER PRODUCTS, L.L.C.,** Appellee.

No. 14–09–00164–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 17, 2010.

---

Cory Daniel Itkin, Kurt B. Arnold, Houston, for appellant.

Nicholas E. Zito, Jack McKinley, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BROWN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Leonard Phillips, appeals from two summary judgments rendered against him in his personal injury suit against appellee, American Elastomer Products, L.L.C. ("AEP"). After sustaining a work-related injury, Phillips filed suit against AEP for negligence, gross negligence, and intentional torts. AEP filed two summary judgment motions, contending that (1) Phillips's negligence claims were barred by the borrowed servant doctrine and the Texas Workers' Compensation Act ("TWCA"), and (2) there was insufficient summary judgment evidence to support the intentional tort claims. The summary judgments were granted, and Phillips filed the instant appeal. In two issues, Phillips contends that the trial court improperly granted summary judgment because (1) AEP failed to establish as a matter of law that Phillips was not a borrowed servant, and (2) the summary judgment evidence was sufficient to raise genuine issues of material fact on the intentional tort claims. We affirm.

## I. BACKGROUND

This personal injury case arises from a back injury Phillips sustained as a result of an autoclave explosion at AEP's rubber manufacturing plant in Houston. About a year prior to the explosion, AEP was in the process of transporting new equipment to its Houston plant. To make room for the new equipment, AEP placed some of its older equipment outside the plant building. One of the pieces of equipment AEP decided to store outside was the autoclave in question. The autoclave—a vessel used to heat rubber—was taken out of commis-sion and placed just outside the plant building. For the following year, the auto-clave remained out of commission and was not inspected or maintained while out of service. About a year later, space inside the plant building became available, and AEP decided to move the autoclave back into the plant building and bring it back into service. AEP's maintenance managers started a series of tests on the vessel to assure its safe re-commission. During the preliminary tests, the autoclave failed and exploded on March 8, 2007. Many people were injured, one fatally.

When the autoclave exploded, Phillips was operating a press machine nearby. Phillips came to work at AEP through a staffing agency, Staffing United ("Staffing"). Phillips was interviewed by Staffing, and AEP trained Philips at the plant. Upon hearing the explosion and feeling its concussion, Phillips attempted to flee the plant building. As he ran, he tripped and injured his back. Phillips claimed that he suffered from herniated discs and was later diagnosed with post-traumatic stress disorder. Phillips reported his back injury to Staffing. Staffing did not contest Phillips's request for workers' compensation, and the workers' compensation insurance carrier paid Phillips statutory benefits.[1]

Thereafter, Phillips filed suit against AEP, initially asserting negligence, gross negligence, and premises liability. AEP moved for summary judgment, claiming that the negligence claims were barred under the exclusivity provision of the TWCA because Phillips was a borrowed servant. Phillips amended his petition, adding intentional infliction of emotional distress ("IIED"). AEP moved for sum-

---

1. Phillips claims that after the blast, the Occupational Safety and Health Administration ("OSHA") issued five citations to AEP: three citations for having performed a faulty inspec-tion of the autoclave that caused the explo-sion; and two citations for having failed to provide sufficient protective lathes and grind-ers and eye protection for AEP's workers.

mary judgment on the IIED claim on both no-evidence and traditional grounds. Phillips amended his petition once again, removing the IIED claim and adding intentional assault and battery claims. The trial court granted the first summary judgment addressing the negligence claims.

AEP then moved for summary judgment on the remaining intentional tort claims, arguing that there was insufficient evidence on the assault, battery, and IIED claims.[2] Upon objection, the trial court—in two separate orders—struck most of Phillips's summary judgment evidence because the documents were either untimely filed or contained inadmissible hearsay. Phillips did not challenge the evidentiary rulings. The trial court granted AEP's no-evidence and traditional summary judgments on the intentional tort claims, and this appeal ensued.

On appeal, Phillips raises two issues. In his first issue, in which he challenges the first summary judgment dismissing his negligence claims, Phillips contends that because he was not a borrowed servant, his common-law negligence claims were not subject to the TWCA's exclusivity provision. In his second issue, challenging AEP's second summary judgment on his intentional assault claims, Phillips contends he produced sufficient summary judgment evidence on the element of intent.

## II. STANDARDS OF REVIEW

While AEP clearly moved for summary judgment under rules 166a(c) and 166a(i)—traditional and no-evidence grounds—on Phillips's intentional tort claims, AEP did not specify whether it was making a traditional motion for summary judgment or a no-evidence motion on the negligence claims. *Compare* Tex. R. Civ. P. 166a(c), *with* Tex. R. Civ. P. 166a(i). Because the two forms of summary judgment are distinct and invoke different standards of review, we must make an initial determination regarding which type of summary judgment was filed on the negligence claims before we can reach the merits of the trial court's ruling on these particular claims.

■ When a motion does not clearly and unambiguously state that it is being filed under rule 166a(i), the nonmovant has no notice that the movant is seeking a no-evidence summary judgment. *Grimes v. Reynolds*, 252 S.W.3d 554, 558 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Accordingly, we construe such summary judgment motion as a traditional motion under rule 166a(c). *See id.* (concluding that when a motion for summary judgment fails to unambiguously state it is filed under rule 166a(i), and does not strictly comply with the requirements of that rule, the motion will be construed as a traditional motion for summary judgment); *see also Adams v. Reynolds Tile and Flooring, Inc.*, 120 S.W.3d 417, 419–20 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Because AEP's first summary judgment motion—addressing Phillips's negligence claims—is not clear on which basis it seeks summary judgment relief, we construe the motion as a traditional motion. Notwithstanding, the record reflects that AEP moved for summary judgment in its second motion—addressing the intentional tort claims—on both no-evidence and traditional summary judgment grounds.

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v.*

2. Although Phillips removed his IIED claim in his fifth amended petition, out of caution, AEP moved for summary judgment on the IIED claim, along with Phillips's assault and battery claims.

*Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). A defendant who seeks a traditional summary judgment under rule 166a(c) must demonstrate that the plaintiff has no cause of action as a matter of law. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003); *Cullins v. Foster,* 171 S.W.3d 521, 530 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A traditional summary judgment is proper when the defendant either negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Cullins,* 171 S.W.3d at 530. When the defendant has carried its summary judgment burden, the burden shifts to the nonmovant to raise a material fact issue precluding summary judgment. *Virginia Indonesia Co. v. Harris County Appraisal Dist.,* 910 S.W.2d 905, 907 (Tex.1995). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Management Co.,* 690 S.W.2d 546, 549 (Tex.1985).

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex. 2003); *Mathis v. Restoration Builders, Inc.,* 231 S.W.3d 47, 50 (Tex.App.-Houston [14th Dist.] 2007, no pet.). We sustain a no-evidence summary judgment when (1) there is a complete absence of proof of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Chapman,* 118 S.W.3d at 751; *Walker v. Thomasson Lumber Co.,* 203 S.W.3d 470, 474 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, and in legal effect is no evidence. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.*

## III. NEGLIGENCE CLAIMS: BORROWED SERVANT DOCTRINE

In the trial court, Phillips asserted three negligence claims against AEP: (1) negligence and gross negligence for failure to maintain a safe workplace, failure to warn of a dangerous workplace, and failure to inspect premises for latent defects; and (2) premises liability for failing to warn Phillips, an invitee, of a condition on the plant premises that posed an unreasonable risk of harm. AEP sought traditional summary judgment on these negligence claims, arguing that the claims were barred under the exclusivity provision of the TWCA and the borrowed servant doctrine.

### A. TWCA's Exclusivity Provision

██ Under the TWCA, a subscriber employer is protected by the Act's exclusive remedy provision, which bars common-law causes of actions by its injured employees. Tex. Labor Code Ann. § 408.001(a) (Vernon 2006). Thus, an employer who pleads and proves TWCA subscriber status is immune from liability for common-law negligence, and the employee's exclusive remedy lies within the TWCA. *See id.; see also Exxon Corp. v.*

*Perez,* 842 S.W.2d 629, 630–31 (Tex.1992) (per curiam). When there is a question as to whether one is an "employer" under the TWCA, Texas courts turn to the borrowed servant doctrine. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 595 (Tex.2000); *Lockett v. HB Zachry Co.,* 285 S.W.3d 63, 75 (Tex.App.-Houston [1st Dist.] 2009, no pet.). As applied in workers' compensation cases, the borrowed servant doctrine acts to protect those employers who have the right to control the manner and details of an employee's work. *Wingfoot Enter. v. Alvarado,* 111 S.W.3d 134, 144 (Tex.2003); *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990); *Gibson v. Grocers Supply Co.,* 866 S.W.2d 757, 760 (Tex. App.-Houston [14th Dist.] 1993, no writ); *Marshall v. Toys–R–Us Nytex, Inc.,* 825 S.W.2d 193, 195–96 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Under the right-of-control test, an injured worker is held to be the employee of the employer who had the right of control over the details of the work at the time of the injury. *Pederson v. Apple Corrugated Packaging, Inc.,* 874 S.W.2d 135, 137 (Tex. App.-Eastland 1994, writ denied); *Hughes v. Compaq Computer Corp.,* No. 14–96–00025–CV, 1996 WL 711233, at *2 (Tex. App.-Houston [14th Dist.] Dec. 12, 1996, writ denied) (not designated for publication). An employer who had the right of control over the employee at the time of the injury is an "employer" for workers' compensation purposes. If the details of the employee's work are controlled by someone other than the employer, then the latter is not protected by the exclusive remedy under the TWCA.

■ To prevail on its affirmative defense of subscriber status, AEP was required to plead and prove: (1) Phillips was a borrowed servant, (2) Phillips was entitled to workers' compensations benefits,

and (3) AEP had workers' compensation insurance that covered claims asserted by Phillips. *See Perez,* 842 S.W.2d at 630–31. On appeal, Phillips challenges only his status as a borrowed servant, *i.e.,* whether AEP had the right of control over the details of his work. He does not challenge the latter two elements.

## B. Right of Control Over Phillips

■ When, as here, the right of control is not expressed in a written agreement, right of control is inferred from the facts and circumstances of the work. *Producers Chemical Co. v. McKay,* 366 S.W.2d 220, 226 (Tex.1963); *Marshall,* 825 S.W.2d at 196. We consider the nature of the work to be performed, the length of the employment, the type of machinery furnished, the acts representing an exercise of actual control, and the right to substitute another operator on a machine. *McKay,* 366 S.W.2d at 226. The type of control normally exercised by an employer includes determining when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson,* 789 S.W.2d at 278–79.

Phillips cites the following evidence to support his contention that Staffing, not AEP, had the right to control his work: (1) Phillips refused to operate a forklift when requested to do so by AEP because Staffing had instructed him not to operate unfamiliar equipment; (2) Staffing issued his payroll checks, paid his workers' compensation benefits, and hired and fired him; (3) AEP did not furnish all of the tools necessary to perform his work; and (4) AEP did not provide safety training.

The trial court struck the evidence supporting the forklift allegations, and Phillips

never challenged the trial court's ruling. *See Feagins v. Tyler Lincoln–Mercury, Inc.,* 277 S.W.3d 450, 455 (Tex.App.-Texarkana 2009, no pet.) (refusing to consider affidavit stricken in the trial court and not challenged on appeal); *McClure v. Denham,* 162 S.W.3d 346, 349 n. 2 (Tex.App.-Fort Worth 2005, no pet.) (noting that appellate court may consider only evidence which is properly before the trial court when reviewing propriety of summary judgment). Because the trial court struck the evidence of forklift operation, and Phillips failed to challenge that ruling, there is no evidence that Phillips refused to perform work for AEP at Staffing's instruction. Furthermore, the fact that Staffing issued payroll checks and paid workers' compensation to Phillips does not necessarily establish that Staffing had the right of control over Phillips's work at AEP's rubber manufacturing plant. *See Employers Cas. Co. v. Am. Employers Ins. Co.,* 397 S.W.2d 292, 296 (Tex.App.-Amarillo 1965, writ ref'd n.r.e.). Likewise, Staffing's hiring and firing of Phillips is not dispositive of the right of control over Phillips's work at AEP's plant.

AEP submitted undisputed evidence that Phillips reported to work at AEP, not Staffing. AEP set Phillips's work hours and breaks. AEP's employees trained Phillips on the work to be performed.[3] AEP directed what work Phillips was to perform. AEP also provided the machines, tools, and raw materials for Phillips's work. *See Thompson,* 789 S.W.2d at 278–79 (reasoning that the type of control normally exercised by an employer includes determining when and where to begin and stop work, the regularity of hours, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result).

The only feasible attempt by Phillips to dispute AEP's evidence is his allegation that he used his personal tools—a socket set and screwdriver—to operate one of the machines. Phillips testified that he "periodically" used his personal tools because the original tools, *provided by AEP,* would sometimes "come up missing." Phillips made this particular statement in his stricken affidavit and twice in his deposition. AEP successfully moved to strike one of the deposition statements, but did not object to the other statement. Assuming we can review the one deposition statement, such statement is insufficient to demonstrate AEP's lack of control over Phillips's work. The general work to be performed was the operation of industrial equipment to heat rubber. Phillips alleged in the statement that he used the socket set and screwdriver to change the molds on a machine. Phillips acknowledged in his deposition that similar tools were provided by AEP, but "periodically" disappeared. Furthermore, AEP's undisputed evidence reflects that the socket set and screwdriver were not required tools to change the molds or to operate the rubber-hearing machinery.

Phillips further challenges AEP's borrowed servant designation because he, Phillips, did not know about the employee-lending agreement between AEP and Staffing. *See Guerrero v. Standard Alloys Mfg. Co.,* 566 S.W.2d 100, 102 (Tex.Civ. App.-Beaumont 1978, writ ref'd n.r.e.) ("[I]n order to establish an employer-employee relationship between an employee and a borrowing employer, the employee

---

**3.** Phillips contends that Todd Brown, one of the workers who trained him, was not an employee of AEP. The evidence Phillips submitted to support this factual allegation was stricken. Further, AEP submitted undisputed evidence that Brown was an employee of AEP at the time Brown trained Phillips.

must know or be charged with knowledge of the lending agreement."). Putting aside for a moment that *Guerrero* is not binding authority, its requirement that a borrowed employee must know of a lending agreement runs counter to recent Supreme Court and court of appeals cases examining the borrowed servant doctrine. Texas courts determining whether an individual is borrowed servant have done so exclusively under the right-of-control test. *See Alvarado*, 111 S.W.3d at 144; *Del Indus.*, 35 S.W.3d at 595 (courts determine whether a company is an employer under the right-of-control test); *Thompson*, 789 S.W.2d at 278; *Gibson*, 866 S.W.2d at 760; *Marshall*, 825 S.W.2d at 195–96. Furthermore, this Court has cautioned against the legal accuracy of *Guerrero:*

> The court in *Guerrero* stated that "in order to establish an employer-employee relationship between an employee and a borrowing employer, the employee must know or be charged with knowledge of the lending agreement." ***Even if this were a correct statement of law,*** our disposition of this case would not be affected. The recorded demonstrates [the employee's] awareness that she was loaned [to the defendant company].

*Mosqueda v. G & H Diversified Mfg., Inc.*, 223 S.W.3d 571, 580 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (citations omitted) (emphasis added).[4] Applying the right-of-control rule, the record reveals that AEP pleaded and presented sufficient summary judgment evidence that Phillips was a borrowed servant. Furthermore, AEP provided undisputed evidence of its subscriber status in compliance with the TWCA, and Phillips was therefore subject to the Act's exclusivity provision and possessed no common-law right of action. Ac-

cordingly, we conclude, as a matter law, appellant's negligence claims are barred under the borrowed servant doctrine and the TWCA's exclusivity provision. The trial court properly granted AEP's traditional summary judgment on Phillips's negligence claims. We overrule Phillips's first issue.

### IV. INTENTIONAL ASSAULT CLAIM: EVIDENCE OF INTENT

Although the exclusive remedy provision of the TWCA bars Phillips's negligence claims, the TWCA does not bar recovery for intentional torts. *See* Tex. Labor Code Ann. § 408.001(a) (applying exclusivity provision only to accidental injuries); *see also* Tex. Const. art. I, § 13 (prohibiting statutory exemption from common law liability for intentional injuries). In his second issue, Phillips contends that summary judgment on his assault claim was improper because he presented sufficient evidence on AEP's intent to injure. Phillips bases his intent argument on the proposition that only reckless conduct is needed, not specific intent, to commit assault. Phillips contends that because the criminal and civil definition of assault includes a reckless mental state, he need show only recklessness—that AEP was aware of, but consciously disregarded, a substantial and unjustifiable risk of harm—to recover for assault. While Phillips is correct on the statutory definition of criminal and civil assault, the cases relied upon by Phillips are distinguishable: none of the cases involves the intentional-tort exception to the TWCA. Phillips cites no authority to support his contention that the intentional-tort exception to the TWCA applies where

---

**4.** The facts of *Guerrero* are distinguishable: as detailed above, most of Phillips's work interaction was with AEP. Accordingly, Phillips is charged with knowledge of the oral lending agreement between Staffing and AEP.

the defendant acted recklessly. *See* Tex. R.App. P. 38.1(i); *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Even if we assume that reckless conduct is sufficient to overcome the TWCA's intentional-tort exception, the record before us does not raise a fact issue on intent.

Phillips contends that AEP was reckless because: (1) it failed to maintain the autoclave while it was out of commission; and (2) it failed to follow safety requirements in bringing the vessel back into service. Phillips relies on the following evidence to support his reckless-conduct allegations: Doug Efrid's deposition, the OSHA citation, Skinner's affidavit, and James Patterson's deposition. The OSHA citation and Skinner's affidavit were stricken below and those rulings are not challenged on appeal. Because evidence which has been excluded by written order or ruling of the trial court is not part of the summary judgment evidence to be considered, we cannot consider this evidence regarding intent. *See Feagins*, 277 S.W.3d at 455; *see also McClure*, 162 S.W.3d at 349 n. 2.

With respect to Efrid's and Patterson's depositions, Phillips contends that the testimony shows AEP's recklessness in maintaining the vessel while out of service and in bringing the vessel back into service. Patterson was the plant manager, and Efrid was AEP's maintenance manager. Phillips contends that AEP knew about specific explosion risks associated with high pressure levels and explosions when bringing a vessel back into service. The safety relief valve monitors pressure levels and relieves excess pressure from an autoclave. Phillips contends that because excess pressure is a known risk when re-energizing an autoclave, AEP acted recklessly when it did not inspect the safety relief valve to check if it were working properly. However, Phillips's allegations are not supported by the cited depositions.

Even accepting Phillips's bald assertions as evidence, they tend to establish only negligent conduct, not intentional injury. *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985) (concluding that the employer must have the specific intent to inflict injury to commit an intentional tort).

Efrid testified that he began the testing process to re-commission the vessel. He tested the pressure controllers and verified that they were working properly and checked the pressure levels. Subsequently, the autoclave failed during the tests. Efrid and Patterson both testified that AEP did not intend for the autoclave to fail, did not know it would fail, and did not know that the testing would result in the autoclave's exploding. The evidence is uncontested that, upon re-commissioning the autoclave, AEP did not have a specific intent to inflict the injury. *See id.* at 407 (holding that an employer's intentional failure to provide a safe workplace does not rise to the level of intentionally injuring its employees unless the employer believes its conduct is substantially certain to cause the injury).

Phillips further argues that Patterson conceded AEP's recklessness in his deposition. We disagree. Read in its entirety, the deposition reflects Patterson's agreement with the general idea that employees should adhere to safety requirements when working on industrial equipment. Because the hypothetical scenarios posed to Patterson were not similar to the facts of the instant case, Patterson's deposition did not establish recklessness or intent to injure. The trial court properly granted summary judgment on the intentional tort claim of assault. We overrule appellant's second issue.

We affirm the trial court's judgment.