

## NUMBER 13-14-00404-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

LUIS BALDEMAR RIOS                                               Appellant,
HERNANDEZ a/k/a ARTURO
RIOS,

**v.**

W-S INDUSTRIAL SERVICES INC.,                                   Appellee.

### On appeal from the 156th District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

By two issues, appellant Luis Baldemar Rios Hernandez a/k/a Arturo Rios ("Rios")

challenges a summary judgment granted in favor of appellee, W-S Industrial Services,

Inc. ("WSI").  Specifically, Rios contends the trial court erred in:  (1) granting summary

judgment because there was a genuine issue of material fact as to whether Rios was WSI's employee or borrowed servant; and (2) overruling Rios's objections to WSI's summary judgment evidence. We affirm.

## I. BACKGROUND

On November 14, 2011, Rios was injured when he fell while hydro-blasting a washer tank at the Sherwin Alumina Company plant in Gregory, Texas. Rios was employed by A.R. Management ("ARM"), a temporary employment agency that supplied workers to client companies, including WSI. WSI and ARM had an operating agreement which generally outlined the parties' duties and obligations regarding the workers. ARM assigned Rios to work for WSI at the plant on the day he was injured. ARM and WSI both carried workers' compensation insurance.

Rios sued WSI and various other parties related to the accident. WSI filed a traditional motion for summary judgment on the ground that Rios's negligence and gross negligence claims against it were barred by the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA"). *See* TEX. LABOR CODE ANN. § 408.001 (West, Westlaw through Ch. 46, 2015 R.S.) (providing that recovery of workers' compensation benefits is the exclusive remedy of an injured employee covered by workers' compensation insurance against his employer). WSI attached the following evidence to its motion: (1) the affidavit of Brian Swasey, WSI's project manager; (2) the operating agreement between ARM and WSI; and (3) WSI's workers' compensation policy. WSI subsequently supplemented its motion twice, submitting as additional evidence: (1) the affidavit of Frank Lynn, WSI's Director of Risk Management and the author of the operating agreement; (2) the affidavit of Bradley Schick, WSI's insurance agent

2

responsible for procuring WSI's workers' compensation policy; and (3) excerpts of deposition testimony of Lynn and Rios.

Rios objected to the trial court's consideration of the operating agreement and WSI's workers' compensation policy as summary judgment evidence on the ground that neither document was properly authenticated. Rios argued that Swasey's affidavit was insufficient to authenticate the documents because Swasey admitted in his deposition testimony that he had not seen either document prior to signing the affidavit and therefore lacked knowledge as to whether the documents were true and correct copies. Rios also complained that Swasey's affidavit failed to comply with the requirements of Texas Rule of Evidence 901, see Tex. R. Evid. 901, because it did not state that he was WSI's custodian of records or that the documents were kept in the regular course of business. Rios later added additional objections to Swasey's affidavit on the grounds that he was an interested witness, the affidavit contained hearsay, and the affidavit contained legal and factual conclusions.

Rios objected to Schick's affidavit, purporting to authenticate WSI's workers' compensation policy, on the ground that it did not comply with Rule 901 because it did not state that Schick was the custodian of records for WSI, that the workers' compensation policy was kept in the regular course of business, or that it was the regular course of business for an employee with knowledge to make the record. Rios also argued that Schick lacked the authority to authenticate the workers' compensation policy because he was merely WSI's insurance agent, not the custodian of records for the insurer.

By written orders, the trial court overruled Rios's objections to WSI's summary judgment evidence. The trial court granted WSI's motion for summary judgment,

3

dismissed Rios's claims against WSI, and severed those claims from claims pending against other defendants. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Nalle Plastics Family Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756. We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Joe*, 145 S.W.3d at 157.

A defendant moving for summary judgment on an affirmative defense must prove conclusively the elements of that defense. *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 646 (Tex. 2000). "A defendant's motion for summary judgment based on an affirmative defense must not be granted if the defendant fails to conclusively establish each element of its affirmative defense." *Rico v. Judson Lofts, Ltd.*, 404 S.W.3d 762, 765 (Tex. App.—San Antonio 2013, pet. denied).

The TWCA states that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage." TEX. LAB. CODE ANN. § 408.001(a). This provision is an affirmative defense

4

that, if proven, protects employers from certain common-law claims of their employees. *Judson Lofts, Ltd.*, 404 S.W.3d at 765. "An employee may have more than one employer within the meaning of the TWCA, and each employer who subscribes to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury." *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012). "[T]he exclusive-remedy provision bars claims by a temporary worker against a client company if the client company establishes: (1) that it was the plaintiff's employer within the meaning of the TWCA, and (2) it subscribed to workers' compensation insurance." *Id.* Thus, in the present case, WSI had the burden to prove the exclusive remedy affirmative defense by establishing that: (1) it was Rios's employer within the meaning of the TWCA and (2) it subscribed to workers' compensation insurance. *See id.*

A trial court's decision as to whether evidence is properly authenticated is reviewed under the same abuse of discretion standard as the admissibility of evidence. *See Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App.1998); *Reavis v. State,* 84 S.W.3d 716, 719 (Tex. App.—Fort Worth 2002, no pet.); *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 308 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "A trial court abuses this discretion when it acts without regard for guiding rules or principles." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). The ultimate test for authentication is always whether the proponent of the evidence has made a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims. *Reavis*, 84 S.W.3d at 719; *see* TEX. R. EVID. 901(a). Thus, the trial court does not abuse its discretion in admitting evidence where it believes that a

reasonable juror could find the evidence has been authenticated or identified. *Fluellen v. State*, 104 S.W.3d 152, 161 (Tex. App.—Texarkana 2003, no pet.).

Rule 166a(f) requires that affidavits supporting or opposing summary judgment must "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f); *see Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). An affidavit must disclose the basis on which the affiant has personal knowledge of the facts asserted. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988). An affiant's position or job responsibilities can qualify the affiant to have personal knowledge of facts and establish how the affiant learned of the facts. *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that affidavits demonstrating personal knowledge often state affiant's knowledge through affiant's position and specifically described job duties).

### III. DISCUSSION

### A. Rios's Objections to WSI's Workers' Compensation Insurance Policy

By his second issue, Rios contends the trial court erred in overruling his objections to WSI's workers' compensation insurance policy because the policy was not properly authenticated and was therefore improper summary judgment evidence. Rios argues that WSI attempted to authenticate its workers' compensation insurance policy through Swasey's affidavit; however, according to Rios, the affidavit failed to comply with the requirements of Texas Rule of Evidence 901 and Swasey admitted in his deposition testimony that he had no knowledge as to whether the policy was a true and correct copy of the original.

6

Rios also argues that WSI attempted to authenticate its workers' compensation policy through Schick's affidavit. Rios contends Schick's affidavit is deficient because: (1) it does not comply with the requirements of Rule 901; and (2) Schick lacked the authority to authenticate the policy because he was merely WSI's insurance agent and not the custodian of records for the insurer.

WSI concedes that neither Swasey's nor Schick's affidavit is a business records affidavit, but argues that a business records affidavit was not required to authenticate the workers' compensation policy.

Subsection (a) of Rule 901 states that the authentication requirement for admissibility of evidence is satisfied by proof sufficient to support a finding that the matter in question is what its proponent claims it is. TEX. R. EVID. 901(a). Subsection (b) provides a nonexclusive list of methods to authenticate evidence. One example given is the testimony of a witness with knowledge that a matter is what it is claimed to be. *Id.* R. 901(b)(1). The rule requires only a showing satisfying the trial court that the matter in question is what its proponent claims. *Llamas v. State*, 270 S.W.3d 274, 281 (Tex. App.—Amarillo 2008, no pet.).

Swasey's affidavit states, in relevant part:

> I am employed by [WSI]. My position with [WSI] is Project Manager, and I have held that position since March 2010. As such, it is my responsibility to be familiar with [WSI's] insurance coverages, including worker's compensation coverage.
>
> . . . .
>
> On or about November 14, 2011, [WSI] was the named insured under a policy of worker's compensation insurance coverage issued by Granite State Insurance Company. A true and correct copy of the worker's compensation insurance policy is attached hereto as Exhibit B. The policy

7

extended to all of [WSI's] operations in the state of Texas, including [WSI's] work at the Facility.

Attached to Swasey's affidavit is a "Workers Compensation and Employers Liability Policy" issued by Granite State Insurance Company. The named insured is WSI. The policy period extends from August 1, 2011 to August 1, 2012, and therefore was in effect at the time of Rios's accident. Part One of the policy, which covers workers' compensation insurance, is applicable to Texas, among other states. We hold this evidence was sufficient to establish that WSI had workers' compensation insurance at the time of Rios's injury. *See Martinez v. H.B. Zachry Co.,* 976 S.W.2d 746, 748 (Tex. App—Houston [1st Dist.] 1998, pet. denied) (holding that affidavit of Zachry's claims manager swearing that the document attached to the affidavit was a true and correct copy of the information page of workers' compensation policy covering the injured employee at the time of the accident was sufficient to carry Zachry's burden to establish that it was a subscriber).

The burden shifted to Rios to present evidence creating a fact issue on whether WSI was a subscriber. *See id.* Rios attempted to create a fact issue by submitting an excerpt from Swasey's deposition testimony, as follows:

Q [Rios's counsel]:  All right, Mr. Swasey, sorry for the little break. Prior to signing the affidavit that is attached to WSI's motion for summary judgment, prior to that time had you actually seen the workers' comp policy and the agreement between A.R. Management and WSI?

A [Swasey]:  No, not—no.

Q:  Mr. Swasey, it'd be fair to say, given the fact that you had not seen either the workers' comp policy attached to your affidavit or the agreement between A.R. Management and WSI, it would be fair to say that you

8

wouldn't have any knowledge as to whether those were true and correct copies of the documents, correct?

A: Real quickly, I just don't recall seeing it. So when I say I didn't see it, I don't recall. Maybe I did, maybe I didn't. But to answer your question right now, if I don't recall it, then I can't tell you whether it was accurate or anything to that effect.

Q.: Okay. So it'd be fair to say that the documents that are attached to your affidavit, you can't tell us that those are true and correct copies of the originals, correct?

A: I can't without looking at them now. I couldn't, no, sir.

Q: Okay. Well, in all fairness, you would need to see the original to compare them to, correct?

A: Correct, sir.

Q: All right. And we've already established that you don't keep copies of the—or you don't keep the originals in your office, correct?

A: Correct.

Q: All right. And up until the time you signed the affidavit, you had—you don't recall having ever seen these documents before?

A: I do not.

. . . .

Q: The—in the last paragraph, you talk about the policy extends to WSI's operations. Do you see that? Talking about the workers' comp policy.

A: I do see it.

Q: As far as the policy, what it covers and to the extent it covers, be fair to say that you don't have any personal knowledge of that?

A: That would be fair.

9

We are unpersuaded that Swasey's deposition testimony created a fact issue as to whether WSI was a subscriber. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a); *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015); *Mega Child Care, Inc.*, 29 S.W.3d at 308. "This has been aptly described as a 'liberal standard of admissibility.'" *Butler*, 459 S.W.3d at 600 (quoting Cathy Cochran, TEXAS RULES OF EVIDENCE HANDBOOK 922 (7th ed. 2007–08)). Rule 901 "does not erect a particularly high hurdle," and "the proponent of evidence does not need to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.); *see also Jackson v. State*, No. 05-14-00274-CR, 2015 WL 3797806, at *2 (Tex. App.—Dallas June 17, 2015, no pet. h.) (mem. op.) We conclude that the trial court did not abuse its discretion in overruling Rios's objections to the workers' compensation policy or in finding that the workers' compensation policy attached to Swasey's affidavit was, in fact, WSI's workers' compensation policy for the applicable period. The trial court did not abuse its discretion in admitting the policy. We overrule Rios's second issue.[1]

**B.      Rios's Status as WSI's Employee or Borrowed Servant**

By his first issue, Rios argues that there was a genuine issue of material fact as to whether Rios was WSI's employee or borrowed servant. Specifically, Rios argues that: (1) there is a fact issue as to whether WSI actually controlled the details of Rios's work, thereby establishing that Rios was WSI's borrowed servant; and (2) there is a fact issue

---

[1] We do not address WSI's argument that its workers' compensation policy was also authenticated by Schick's affidavit because the policy attached to Schick's affidavit named ARM as the insured, not WSI.

10

as to Rios's status as WSI's employee or borrowed servant because the agreement between ARM and WSI stated that personnel provided by ARM were "the exclusive employees and work[ed] under the direction of" ARM.

We begin with Rios's second argument: that the written agreement created a fact issue as to whether Rios was WSI's borrowed servant because it stated that the personnel provided by ARM are ARM's exclusive employees and work under ARM's direction. The contract states, in relevant part, that "personnel provided by [ARM] are the exclusive employees and work under the direction of [ARM] . . . ." We are unpersuaded by Rios's argument.

In *Exxon Corporation v. Perez*, the Texas Supreme Court found that a contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered in determining an employee's status, but it is not controlling. 842 S.W.2d 629, 630 (Tex. 1992). This Court has held that "a contractual designation of control will not establish borrowed servant status as a matter of law where evidence shows that the parties acted to the contrary." *Coco v. Port of Corpus Christi Authority,* 132 S.W.3d 689, 692–93 (Tex. App.—Corpus Christi 2004, no pet.). "[A] general employee of one employer becomes the borrowed employee of another 'employer' if the other special employer has the right to direct and control the employee with respect to the details of the particular work at issue." *Lockett v. HB Zachary Co.*, 285 S.W.3d 63, 76 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

In support of his argument that the contract created a fact issue on the "right of control," Rios cites *Hoffman v. Trinity Industries, Inc.* 979 S.W.2d 88 (Tex. App.—Beaumont 1998, pet. dism'd by agr.). In *Hoffman*, the plaintiff worked for a temporary

11

employment agency that assigned him to work for one of its clients. *Id.* at 89. The summary judgment evidence established that the client company controlled the details of the plaintiff's work. *Id.* at 91. However, the contract between the agency and the client provided that the agency would have "complete and sole control over its employees, the details of the services and methods by which the services are accomplished." *Id.* The *Hoffman* Court concluded that the contract was a "factor to be considered" and that the express language of the contract created a fact issue as to whether the plaintiff was the client company's borrowed servant. *Id.*

We find *Hoffman* distinguishable. In *Hoffman*, the contract stated that the temporary agency had the right to control "the details of the services and methods by which the services are accomplished." *Id.* In contrast, the agreement between ARM and WSI merely states that employees work under ARM's "direction"; the contract is silent as to which company had the right to control the details of work performed for WSI. At his deposition, Lynn, who drafted the agreement for WSI, was questioned regarding the language in the agreement that personnel provided by ARM work under ARM's direction. Lynn stated that "[ARM] directs [ARM personnel] where to report for work. That's the end of their involvement in their direction."[2] We conclude that the "work under the direction" language of the agreement is distinguishable from the right to control "the details of the services and methods" language in *Hoffman* and that the contract language therefore does not raise a fact issue regarding whether WSI had the right to control Rios's work.

---

[2] Although Rios objected to Lynn's deposition testimony on the ground that Lynn was not present on the day of the accident and lacked personal knowledge regarding any instructions to Rios, we conclude that, as the author of the agreement, he had personal knowledge of the intent of the language in the agreement.

12

Rios also argues that there is a fact issue as to whether WSI actually controlled the details of his work.

> [A] general employee of one employer becomes the borrowed employee of another "employer" if the other special employer has the right to direct and control the employee with respect to the details of the particular work at issue. The test examines whether the borrowing employer has the right to control the progress, details, and methods of operations of the work. The borrowing employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment.

*Lockett*, 285 S.W.3d at 76 (internal citations omitted). In determining whether a right of control exists, courts consider the nature of the work to be performed, the length of the employment, the type of machinery furnished, the acts representing an exercise of actual control, and the right to substitute another operator on a machine. *Phillips v. Am. Elastomer Products, L.L.C.*, 316 S.W.3d 181, 187 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

> The type of control normally exercised by an employer includes determining when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result.

*Id.*

Rios argues that WSI cannot rely on Swasey's affidavit or Lynn's deposition testimony because neither had personal knowledge of any instructions given to Rios on the day he was injured.[3] We need not discuss Rios's challenges to Swasey's and Lynn's statements, however, because Rios's own testimony, which follows, established that WSI had the right to control—and did, in fact, control—the details of his work.

Q. [Sherwin's counsel]: The supervisor that you were telling me about earlier who worked on your crew at the time of your accident, who was that again?

---

[3] In Swasey's affidavit and in Lynn's deposition testimony, both stated that WSI had the right to direct and control Rios with respect to the details of his work.

A. [Rios]        The one that was with me, the crew leader?

Q.              Yes.

A.              Jimmy Garcia.

Q.              And was Mr. Garcia the person in charge for WSI in that tank when you were working?

A.              Uh-huh.

Q.              Yes?

A.              Yes.

. . . .

Q.              But Mr. Garcia was the person that gave you instructions or directions about how to do your hydroblasting in the tank; is that right?

A.              Yes, because before we came in, he would tell us what could happen.

Q.              All right. And WSI had been hired to come in there and basically clean the inside of the tanks; is that right?

Q.              What I mean—and I didn't ask a very good question. The only people that were inside the tank at the time of your accident were the WSI crew; is that right?

A.              Yes, Jimmy was a WSI employee.

Q.              There was nobody from Sherwin Alumina who was instructing you about how to perform your hydroblasting job; is that right?

A.              It was just us two there.

Q.              You and Mr. Garcia; is that right?

A.              Yes, and the watchman, but he was by the door, but not inside.

14

Q. But what I'm asking, sir, is: Nobody from Sherwin Alumina was inside the tank telling you how to do your hydroblasting job; is that right?

A. No.

Q. But that's correct, they weren't doing that?

A. That is correct, they were not there.

Q. The hose that you were using, was that a WSI hose?

A. Yes.

Q. The tools and equipment that you would use, would that be WSI equipment?

A. Yes.

Q. The hard hats and any safety equipment that you used, was that WSI's equipment?

A. Yes, WSI.

. . . .

Q. [WSI's counsel]: On the day of the accident, you were working with the WS Industrial crew, correct?

A. Yes.

Q. And you were taking directions from the crew leader, Jimmy Garcia?

A. Yes.

Q. Mr. Garcia told you when you were going to work, right?

A. Yes.

Q. Mr. Garcia told you what work you were going to do?

15

A.                    Yes.

Q.                    Mr. Garcia told you how he wanted you to do the work?

A.                    Yes.

Q.                    And Mr. Garcia could send you home if he didn't like your work?

A.                    Yes.

Q.                    You were working that day under the direction of Mr. Garcia?

A.                    Yes.

We conclude that Rios's testimony established conclusively that WSI had the right to control, and did control, the details of Rios's work. *See Phillips*, 316 S.W.3d at 187. Rios presented no evidence raising a fact issue as to WSI's right to control. Accordingly, the evidence established that Rios was WSI's borrowed employee, and the trial court correctly ruled that WSI was an employer for purposes of asserting the exclusive remedy provision of the TWCA. *See Lockett*, 285 S.W.3d at 76–77. We overrule Rios's first issue.

We hold that WSI met its burden to establish that: (1) it was Rios's employer within the meaning of TWCA; and (2) it subscribed to workers' compensation insurance. *See Port Elevator*, 358 S.W.3d at 242. WSI thus established that Rios's claims were barred by the exclusive remedy provision, and the trial court did not err in granting summary judgment on those grounds. *See id.*

**IV. CONCLUSION**

We affirm the trial court's judgment.

16

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
31st day of August, 2015.