ALICE LEASING CORPORATION, Appellant,

v.

Linda CASTILLO, Individually and as Representative of the Estate of Evaristo Castillo, Deceased, and as Next Friend of Evaristo Castillo, Jr., Trinidad Castillo, and Lisa Lee Castillo, Minor Children, and Carolina Castillo, Intervenor, Appellees.

No. 04–00–00404–CV.

Court of Appeals of Texas, San Antonio.

June 27, 2001.

Chester J. Makowski, Luis A. Garcia, Royston, Rayzor, Vickery & Williams, San Antonio, Ruth A. Silvers, Royston, Rayzor, Vickery & Williams, Houston, Will W. Pierson, Royston, Rayzor, Vickery & Williams, Corpus Christi, for Appellant.

Steve Sumner, Rebecca E. Hamilton, Sumner, Schick & Hamilton, Dallas, Steve T. Hastings, Huerta, Hastings & Allison, Corpus Christi, Wallace W. Canales, Alice, for Appellee.

Sitting TOM RICKHOFF and ALMA L. LÓPEZ, Justices, SARAH B. DUNCAN, Justice, (concurring in the judgment only).

## OPINION

ALMA L. LÓPEZ, Justice.

This is an appeal of a judgment entered in a wrongful death and survival action pursuant to a jury verdict. Appellant complains of the failure to submit a jury question on the deceased's status as a borrowed servant and failure to submit a jury instruction on workers' compensation as an exclusive remedy. Appellant also raises issues concerning a release, the legal and factual sufficiency of evidence supporting the jury finding no fault on the part of the settling co-defendant, and the admission of a videotaped experiment. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Alice Leasing Corporation (Alice Leasing) and Heldt Bros. Trucks (Heldt Bros.), who were separate entities [1] engaged in the trucking industry, entered into a management agreement in 1991. Under the terms of this agreement, Alice Leasing assumed the following responsibilities: to supervise, manage and operate the business; day-to-day operation and management of the business; to establish operating policies, standards of operation, standards of service and maintenance, pricing and other policies affecting the business on the day to day operation thereof; to hire, promote, discharge and supervise the work of the employees performing services for the partnership; and to make or install all necessary and proper repairs, replacements, additions and improvements in and to the equipment in order to keep same in good repair. The partnership assumed responsibility for management and supervision of the sales and clerical staff, in other words the inside or office staff, and carried them on the Heldt Bros. payroll. Alice Leasing managed, supervised, and carried the outside or field employees on the Alice Leasing payroll. Heldt Bros. carried workers' compensation insurance on its employees. Alice Leasing was a non-subscriber. [2]

---

1. There are references in the record that indicate that Alice Leasing is a Texas corporation while Heldt Bros. was organized as a partnership. In response to Intervenor Texas Workers' Compensation Insurance Fund's requests for admission, both Alice Leasing and Heldt Bros. separately admitted that "[a]t the time Evaristo Castillo sustained his fatal injury, Heldt Bros. Trucks, Heldt Bros. Garage, Inc. and Alice Leasing Corporation were not all operating together as a single business enterprise."

2. "Texas is the only state in which workers' compensation coverage is optional. A 1996 survey revealed that 39% of Texas employers, who employ 20% of the workforce, opted out of workers' compensation coverage." Chief Justice Phil Hardberger, *Texas Workers' Compensation: The Ten–Year Survey—Strengths, Weaknesses, and Recommendations*, 32 ST MARY'S L.J. 1, 6 (2000).

Evaristo Castillo was killed in the course and scope of his employment as a truck driver on January 11, 1994. Whose employee he was on that date continues to be contested on appeal. Castillo worked for Heldt Bros. from 1988 to 1991 as a truck driver, oilfield forklift operator, swamper, welder, and mechanic. He was rehired as a truck driver and forklift operator in 1993, and under the terms of the management agreement was put on the Alice Leasing payroll.

On the day of the accident, Castillo and his co-worker, Jose Buentello, were dispatched with a large gin pole truck,[3] known as Truck 82, to the Alice Police Department to move a large generator. Castillo was the driver and Buentello was the swamper;[4] both were Alice Leasing employees. The dispatcher, an office employee, was on the Heldt Bros. payroll. At the work site, Castillo was operating the winch controls to begin the process of "poling up" or raising the gin poles into position. Castillo was inadequately trained to operate the gin pole truck. The equipment was improperly rigged. Tension in the cables built up to the point that they snapped, causing the block in the bed of the trailer to break. A piece of the block assembly flew through the air and struck Castillo in the head as he looked through the rear window of the cab of the truck. He died instantly.

The Castillo survivors initially sued Heldt Bros. and later added Alice Leasing as a defendant. The Texas Workers' Compensation Insurance Fund (TWCIF) intervened to pursue subrogation for benefits paid to the Castillo survivors pursuant to the Heldt Bros. workers' compensation coverage. In response to TWCIF's requests for admissions, Alice Leasing judicially admitted that it was Castillo's employer and Heldt Bros. was not his employer at the time of the accident. As a result, the trial court granted TWCIF's uncontested motion for partial summary judgment declaring Alice Leasing to be Castillo's employer at the time of his death. This summary judgment was severed and was not appealed. Alice Leasing filed a cross-claim for contribution against Heldt Bros. Heldt Bros. settled its liability with the Castillo survivors. The release provided: "Plaintiffs do not release any claim they may have in regard to damages which arose out of and occurred during the course and scope of Evaristo Castillo's employment for Alice Leasing Corporation." The trial court approved the settlement and later entered a partial summary judgment in favor of Heldt Bros. and against Alice Leasing on its contribution cross-claim. The trial court conducted a three-day jury trial on the claims filed against Alice Leasing. The jury awarded the Castillo family a total of $1,350,000 in damages, and judgment was ultimately entered in accordance with the verdict. A motion for new trial was denied, and this appeal was filed.

### WHO IS THE EMPLOYER?

▆ In its first issue, Alice Leasing contends that it was entitled to a jury question on Castillo's status as a borrowed employee of Heldt Bros. Under the borrowed employee[5] doctrine, a general em-

---

3. A "gin pole truck" is equipped with poles and winches for lifting heavy loads. It operates like a portable crane.

4. A "swamper" assists the driver/operator of a gin pole truck in such things as loading, rigging, and unloading the truck.

5. When the workers' compensation act was revised in 1993, the term "servant" was "omitted from the revised law because, as used in the source law, 'servant' is included within the meaning of 'employee.'" TEX. LABOR CODE § 408.001, revisor's note (Vernon 1996).

ployee of one employer may be temporarily lent to another employer. Between the two, the employer who has the right of control at the time of the accident is the one who had responsibility for providing workers' compensation. In doing so, that employer would be exempt from common law liability. *See Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977); *Hilgenberg v. Elam*, 145 Tex. 437, 198 S.W.2d 94 (1946). The central inquiry is which employer had the right of control of the details and the manner of work. The test is set forth in *Producers Chem. Co. v. McKay*, as follows:

> If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employers in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence.

*Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963).

■ Generally, the right of control and direction is a question of contract between the general employer and special employer. *Id.* at 226. Where both employers are operating under a contract expressly assigning the right to control, a court can dispose of the borrowed employee issue without the necessity of considering the facts and circumstances of the project. *See Marshall v. Toys-R-Us Nytex, Inc.*, 825 S.W.2d 193, 196 (Tex.App.—Houston [14th] 1992, writ denied); *Bucyrus–Erie Co. v. Fogle Equip. Corp.*, 712 S.W.2d 202, 204 (Tex.App.—Houston [14th] 1986, writ ref'd n.r.e.)(citing *McKay* ). When no written contract between the parties delineates the right of control, it must necessarily be determined from the facts and circumstances of the

project. *McKay*, 366 S.W.2d at 226; *Marshall*, 825 S.W.2d at 196.

■ In this case the management agreement called for the partnership to assume responsibility for management and supervision of the sales and clerical staff, in other words the inside or office staff, and they were carried on the Heldt Bros. payroll. Alice Leasing managed, supervised, and carried the outside or field employees on the Alice Leasing payroll. Heldt Bros. argues that these contract provisions should not control, but simply be one factor the court considers in determining whether there is a fact issue on right of control. *See Exxon v. Perez*, 842 S.W.2d 629 (Tex.1992). *But see McKay*, 366 S.W.2d at 226 (look to contract, written or oral, between two employers expressly stating which has right of control; look to circumstances when contract only implies right or contains no provision for right of control). What the supreme court actually stated in *Perez* is:

> A contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling. *Id. [Producer's Chem. Co. v. McKay*, 366 S.W.2d 220] at 226 [(Tex. 1963)] This court has held that a contract will not prevent the existence of a master-servant relationship where the contract is "a mere sham or cloak designed to conceal the true legal relationship between the parties." *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964); *see also Swift v. Aetna Casualty & Surety Co.*, 449 S.W.2d 818, 821 (Tex. Civ.App.—Houston [14th Dist.] 1970, no writ) (contract not conclusive); *Highlands Underwriters Ins. Co. v. Martinez*, 441 S.W.2d 666, 667-68 (Tex.Civ. App.—Waco 1969, writ ref'd n.r.e.) (same). Where the right of control prescribed or retained over an employee is

a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced. *Humble Oil & Refining Co. v. Martin,* 148 Tex. 175, 178, 222 S.W.2d 995, 997–98 (1949); *Halliburton v. Texas Indemnity Ins. Co.,* 147 Tex. 133, 137, 213 S.W.2d 677, 679 (1948); [Underwriters Ins. Co. v.] *Martinez,* 441 S.W.2d [666]at 668 [(Tex.Civ. App.—Waco 1969)].

*Perez,* 842 S.W.2d at 630. Thus, if the contract says one thing, but the parties continually act in disregard of the contractual delineation of right of control, we are directed to simply consider the control provisions as one factor to weigh against any conflicting evidence of the exercise of that right to determine whether there is sufficient evidence to present the right of control issue to the fact finder.

Alice Leasing points to two partnership office staff who were listed on Heldt's payroll as persons who exercised the right of control over Castillo's work on the day of the accident. Those employees were the dispatcher, who handed out work assignments each day, and the terminal manager, who could instruct Alice Leasing employees on what to do and what not to do. The gin pole truck involved in the accident was owned by Alice Leasing, leased to Heldt Bros., and sported a Heldt Bros. company logo. We have previously rejected a similar argument that assignment to a work site is the equivalent to control of the manner of work performance. *See Rega-*

*lado v. H.E. Butt Grocery Co.,* 863 S.W.2d 107, 111–12 (Tex.App.—San Antonio 1993, no writ)(Rickhoff, J.). In reaching that conclusion, we were guided by the Texas Supreme Court which has noted, "there is a vast difference between the right to point out the location . . ., and, on the other hand, the right to direct the details of how such work is to be accomplished." *Insurors Indem. & Ins. Co. v. Pridgen,* 148 Tex. 219, 223 S.W.2d 217, 221 (1949). Thus, these facts do not raise a fact issue on the right of control at the site at the time of the injury.

In addition to the clear allocation of employees set forth in the contract,[6] Alice Leasing judicially admitted in its response to TWCIF's requests for admissions in this lawsuit that on January 11, 1994, Castillo sustained a fatal injury in the course and scope of employment[7] with Alice Leasing and that he was not in the course and scope of Heldt Bros.'s employment. Had Castillo been the borrowed employee of Heldt Bros., he would not have been in the course and scope of his employment with Alice Leasing at the time he was killed. But we have a finding that establishes this fact otherwise. This finding was established as a matter of law. *See Marshall,* 825 S.W.2d at 196. We will not question this finding because it was never appealed.

Once Castillo arrived at the work site, there is no evidence in the record

---

6. Alice Leasing infers that this management agreement was a sham, crafted by Heldt Bros., to avoid expensive workers' compensation premiums by creating the illusion that its employees actually worked for Alice Leasing. However, as the general partner and agent of Heldt Bros., Alice Leasing can hardly stand with clean hands if such motives for employee allocation drove the agreement.

7. "Course and scope of employment" is defined as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises or the employer or at other locations." TEX. LABOR CODE ANN. § 401.001(12) (Vernon Supp.2001).

which controverts the management agreement or Alice Leasing's judicial admission[8] that Castillo was its employee or that Alice Leasing controlled the details of his work. Both the dispatcher and another office staffer testified that all outside field employees, including the truck drivers, were Alice Leasing employees. There was also testimony that once employees were dispatched to the field, their supervision was in the hands of Alice Leasing field supervisors—in this case, the driver, Castillo, would have been "in charge." The management agreement charged Alice Leasing with the day-to-day operation and management of the business, including the right to hire, promote, discharge and supervise the work of the employees performing services for the partnership. Alice Leasing provided any field training Castillo received. When the corporate officer filed the accident report on Castillo, she listed him as an employee of Alice Leasing.

■ On the face of the contract provision, which is not controverted by material evidence, the admission, and the final summary judgment on this issue, Alice Leasing was not entitled to a jury question on Castillo's status as a borrowed employee. There was only one employer's liability at issue.[9] Appellant's first issue is overruled.

■ In its second issue, Alice Leasing argues that because Alice Leasing and Heldt Bros. were business partners and because Heldt Bros. was a subscriber through which the Castillo survivors received workers' compensation benefits, the protection against common law liability for employers should also have covered Alice Leasing. The trial court's refusal to submit a jury instruction that identified the plaintiffs' exclusive remedy as such is asserted as error.[10] Alice Leasing claims that all members of a partnership are entitled to workers' compensation immunity. For support of this proposition, Alice Leasing relies on *Lawler v. Dallas Statler–Hilton Joint Venture*, 793 S.W.2d 27 (Tex. App.—Dallas 1990, writ denied).

The Dallas court of appeals rejected the growing trend in Texas as an entity theory trine. Rather, it espoused under the borrowed employee doctrine the opposite theory, that "[o]n the occasion in question, Evaristo Castillo could not have been an employee of both Heldt Brothers Trucks and Alice Leasing Corporation." This dual employee theory was waived. *See* Tex.R. Civ. P. 272.

8. Indeed, Alice Leasing's judicial admission that Castillo was its employee and not Heldt's employee at the time he suffered his fatal injury was a waiver of requisite proof on this element of the affirmative defense. "Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence." *Houston First American Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983); *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726 (1941); 1A R. Ray, Texas Law of Evidence, § 1144 (Texas Practice 3d ed.1980).

9. For the first time on appeal, Alice Leasing urged the court to consider the dual employee doctrine, as an alternative theory of defense. *See Brown v. Aztec Rig & Equip., Inc.*, 921 S.W.2d 835 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (contract expressly provided that both parties to be considered co-employers for purposes of worker's compensation liability). However, Alice Leasing did not submit a jury question under this doc-

10. Alice Leasing's second issue complains of the court's refusal to issue an instruction, but in the body of its brief, it argues the failure to submit a jury question on workers' compensation. The record cite is to defendant's proposed jury question no. 1: "Do you find from a preponderance of the evidence that the plaintiffs and Intervenor released their claims against Alice Leasing Corporation?" We find no such jury instruction, let alone one that contains substantially correct wording on the issue of whether Alice Leasing and Heldt Bros. were partners or whether Castillo was a partnership employee. The matter was therefore waived. *See* Tex.R. Civ P. 279.

state, and chose, instead, to apply the aggregate theory to employment relationships involving partnerships and joint ventures. The court held that an individual partner or an individual member of a joint venture was an employer of the partnership's or joint venturer's employees for purposes of the Texas workers' compensation law. *Id.* at 34. The court also found that the management agreement merely designated HHC as the special agent to act as hotel manager on behalf of the principal, the joint venture. Thus, the court concluded that principles of agency rather than partnership law should govern the employment issue. The court found that Lawler's right of control argument was irrelevant because the joint venture, as principal, retained the right of control over those whom its special agent employed. Id. at 35.

Since *Lawler* issued, however, the Legislature unequivocally embraced the entity theory of partnership law in 1993. The Texas Revised Partnership Act defines a partnership as "an entity distinct from its partners." Tex.Rev.Civ. Stat. Ann. art. 6132b–2.01 (Vernon Supp.2001). The commentator noted: "This clear statement is intended to allay previous concerns that stemmed from confusion as to whether a partnership was an entity or an aggregate of its members." *Id.* at cmt. Thus, *Lawler* has been overruled by statute and cannot support Alice Leasing's position that the aggregate theory should be applied here.[11]

In turning to the management agreement, we note that the only employees of the partnership itself are those "holding management or other key positions." Field workers, such as Castillo, are not included in the section entitled "Partnership Employees," but rather are mentioned in connection with Alice Leasing's responsibilities to hire, fire and supervise employees performing services for the partnership. Alice Leasing maintained a separate payroll for its employees, including the field workers, and elected to manage its liability exposure for these workers as a non-subscriber.

■ Alice Leasing argues it should also be immune from liability under the workers' compensation act. Heldt Bros., its partner, was a subscriber whose carrier paid benefits to the Castillos. Alice Leasing argues that these facts should bar plaintiffs' claims and their exclusive remedy was to receive those benefits. However, the party who assumes primary responsibility for payment of workers' compensation benefits is not in every instance the workers' compensation employer, since the party's carrier can recoup those payments from the entity actually liable, that is, the employer with the right of control over the injured worker. *See Smith v. Otis Engineering Corp.*, 670 S.W.2d 750, 752 (Tex.App.—Houston [1st Dist.] 1984, no writ). In this case, Heldt Bros.'s carrier, TWCIF, intervened to obtain a declaratory judgment on this issue of who employed Castillo at the time of his fatal accident, and to assert its subrogation rights for the benefits paid to the Castillos. Both Alice Leasing and Heldt Bros. filed admissions which averred that Castillo was an Alice Leasing employee

11. Alice Leasing duly notes, without explaining the significance of, the adoption of the Texas Revised Partnership Act, but argues that because this case was originally filed before the adoption of the Act, it continues to be governed by its predecessor, the Uniform Partnership Act, and *Lawler's* analysis is still relevant. That is not correct. The TRPA was effective on Jan. 1, 1994, and this lawsuit was filed two weeks later. The partnership agreement that may have existed between these two parties is not a part of the record on appeal.

and not a Heldt Bros. employee. Both entities admitted that they were not operating as a single business enterprise. The jury also heard testimony from Susie Spaniel, safety and insurance coordinator for the partnership, who stated she rehired Castillo in 1993 as an Alice Leasing employee and explained to him that Alice Leasing did not have workers' compensation insurance but covered that potential liability under another insurance policy. Moreover, Alice Leasing does not argue that Castillo was an employee of the partnership, rather that he was an employee of one of the partners, and that the other partner's subscriber status should also cover the non-subscribing partner. That broad a construction would send every workers' compensation carrier into receivership while providing a windfall to subscribers in underpaid premiums due to manipulation of the employee lists with non-subscribing partners. Alice Leasing's suggestion that such manipulation lies at the heart of its management agreement with Heldt Bros. does not change the fact that it knowingly opted out of the workers' compensation program and the employer protections that program affords.

## THE RELEASE

██ In a third issue, Alice Leasing argues that the release of Heldt Bros., released Alice Leasing because Castillo was the borrowed servant of Heldt Bros., its partner. It claims the court erred in refusing to submit "an instruction"[12] on this point and when it failed to dismiss the case. The release itself, expressly states that plaintiffs release Alice Leasing from any claim:

> *except* those claims arising out of the course and scope of his employment for

Alice Leasing Corporation. Notwithstanding anything to the contrary stated above, the Plaintiffs do not release any claim they may have in regard to damages which arose out of and occurred during the course and scope of Evaristo Castillo's employment for Alice Leasing Corporation. (emphasis added)

Alice Leasing claims any attempt to preserve claims against it were extinguished by the terms of the release for two reasons. First, it asserts that Castillo was a borrowed servant of Heldt Bros. at the time of his death, and thus not in the course and scope of his employment for Alice Leasing. Since Alice Leasing is released from all injuries other than those that occurred while in the course and scope of Alice Leasing's employ, and he was not injured in that context, the release covers Alice Leasing's exposure to liability. Secondly, the release encompasses Alice Leasing as an agent of Heldt Bros. As we have rejected Alice Leasing's arguments concerning borrowed employee and partnership employee in the two previous issues, this argument fails as well. Appellant's third issue is overruled.

## NO FAULT OF HELDT BROS.

██ The jury found Alice Leasing 100% negligent and Heldt Bros. not negligent. In a fourth issue, Alice Leasing argues that support for this finding is legally or factually insufficient. In considering legal sufficiency points, a reviewing court considers only the evidence favorable to the decision of the trier of fact and disregards all evidence and inferences to the contrary. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If more than a scintilla of evidence is offered on a fact, the evidence is legally

---

12. Again, defendant did not propose an instruction, and must be referring to its proposed jury issue no. 1, which asks a legal

question, an improper submission for the jury. *See* n. 6 *supra.*

sufficient to support the jury's finding on that matter. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). In considering factual insufficiency points, a reviewing court assesses all the evidence and reverses for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, the reviewing court does not serve as fact finder, pass upon the credibility of witnesses, or substitute its judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *See Thrift v. Hubbard,* 974 S.W.2d 70, 76 (Tex.App.—San Antonio 1998, pet. denied).

 Alice Leasing urges the court to review the record to determine if there is sufficient evidence to establish, as a matter of law, that Heldt Bros. engaged in negligent conduct, or alternatively, whether the jury's negative finding is against the great weight and preponderance of the evidence. Alice Leasing then (a) lists a series of evidentiary points that should be disregarded in the legal sufficiency review because they only attack the negligence finding while evidence tending to support the contrary is ignored, and (b) fails to weigh this evidence against the evidence which does support the finding. Reviewing the evidence, we note that: Truck 82 was owned by Alice Leasing, but designed, built by and leased to Heldt Bros. There was conflicting evidence as to who had the authority or responsibility to install a safety screen that might have prevented the accident. Alice Leasing was charged with training its drivers on safety issues. Alice Leasing knew about the safety risk of the exposed rear window on Truck 82 and had rejected the idea of installing the safety screen. Alice Leasing had fitted most of its trucks with safety screens. Alice Leasing employees knew Castillo was not trained or experienced in driving and operating Truck 82. They laughed when the dispatcher told Buentello to swamp with Castillo on Truck 82, implying that he would not know how to handle it. Plaintiffs' human factors expert testified that the Alice Leasing swamper was negligent in failing to stop Castillo's actions by signaling to cut the system off once he saw the poles bind up. There was conflicting evidence as to whether Alice Leasing failed to provide safety and operation training to Castillo with regard to the type of truck involved in the accident.

 Alice Leasing notes that plaintiffs' experts also attributed some blame to Heldt Bros. and this was uncontroverted (since Heldt Bros., a settling defendant, did not appear at the jury trial). A jury may not disregard uncontroverted evidence. *See Kennedy v. Missouri Pac. R.R.,* 778 S.W.2d 552, 557 (Tex.App.—Beaumont 1989, writ denied). However, as the trial court noted at the hearing on the motion for new trial, a Texas jury is entitled to accept or reject testimony as persuasive. *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 338–39 (Tex.1998) (undisputed expert testimony does not bind jury); *Yap v. ANR Freight Sys., Inc.,* 789 S.W.2d 424, 425 (Tex.App.—Houston [1st Dist.] 1990, no writ). In light of the scope of our review on legal sufficiency grounds, which requires the appellate court to disregard all evidence contrary to the verdict, we must resolve this apparent conflict in standards in favor of the evidence tending to support the verdict. *See* W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY's L.J. 351 (1998 ). Likewise, in reviewing the entire record, we are unable to conclude that the jury's nonfinding of negligence against

Heldt Bros. is against the great weight and preponderance of the evidence. Appellant's fourth issue is overruled.

### VIDEOTAPED DEMONSTRATION

The plaintiffs introduced a videotaped demonstration of a proposed design of a safer alternative to the design of the existing gin pole truck. Alice Leasing argues that this was error because the demonstration was not substantially similar to the conditions of the accident. This error, Alice Leasing argues, was compounded by the fact that it likely improperly influenced the jury to find negligence. It cites no rule or case law to support this point, other than to assert the demonstration constituted an abuse of discretion.

■■■■■■ The trial judge is charged with the role of gatekeeper and determines the admissibility of expert evidence. The proponent has the burden to prove that the expert is qualified and to demonstrate that he possesses the special knowledge as to the very matter under consideration. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718–19 (Tex.1998). Whether an expert witness is qualified to testify is committed to the discretion of the trial court and there is no difference between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial. *See United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30–31 (Tex.1997). In determining whether the testimony is admissible, the trial court does not determine whether the expert's conclusions are correct, but only whether the analysis used to reach the conclusions is reliable. *Gammill,* 972 S.W.2d at 728. As an appellate court, we do not consider the admissibility or inadmissibility of the evidence *de novo.* Instead, we test abuse of discretion of the trial court by whether the trial court acted without reference to any guiding rules or principles. *Longoria,* 938 S.W.2d at 31.

■■■■ On direct examination, the witness was asked to explain how he built the safety device, and stated that it was a fair demonstration of the effectiveness of a safety device. Before the videotape of a testing of the device was shown to the jury, appellant's counsel asked the court for permission to voir dire the witness for the purpose of showing that the device was not substantially similar to the device involved in this case. The trial court overruled the request and subsequent objection, stating that appellant would be permitted to cover this issue on cross-examination. The demonstration illustrated that a safety screen, similar to the types that are installed on trucks equipped with winches and poles, would have prevented the block assembly fragment from reaching the driver/operator of the gin pole truck. The witness testified that the demonstration duplicated the same speed which propelled the block toward the safety screen as occurred on the day of the accident. The court permitted a vigorous cross-examination of the witness, his demonstration and his opinions.

Appellant does not attack the expert's qualifications, only the use of the videotape to illustrate his opinion. His testimony narrating the demonstration is admissible under Rule 705, which in this case, concerned the underlying data to calculate the propulsion force of the missile and whether a safety screen could have prevented the injury. *See* TEX.R. EVID. 705. Moreover, this was not the only evidence before the jury that a safety screen, commonly installed on gin pole trucks to offer this precise margin of safety, could have prevented the fatal injury to Castillo. Appellant's fifth issue is overruled.

The judgment of the trial court is affirmed.