

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00008-CV

WILLIAM BRADLEY LENTZ, BEVERLY LENTZ, JASON LENTZ, M.D.,
AND REBECCA VANLANDINGHAM, Appellants

V.

MEWBOURNE OIL COMPANY AND MEWBOURNE HOLDINGS, INC., Appellees

On Appeal from the County Court at Law No. 3
Smith County, Texas
Trial Court No. 67732-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After sustaining severe and disabling injuries while working on a well owned by Mewbourne Oil Company (MOC) in Upton County,[1] William Bradley Lentz[2] filed a personal injury lawsuit against MOC and Mewbourne Holdings, Inc. (Mewbourne Holdings). MOC and Mewbourne Holdings filed traditional and no-evidence motions for summary judgment, alleging their entitlement to the exclusive remedy provision of the Texas Workers' Compensation Act (TWCA). *See* TEX. LABOR CODE ANN. § 408.001(a) (West 2015). The trial court agreed and granted summary judgment. Lentz appeals the trial court's summary judgment only in favor of MOC. Because MOC conclusively established that it subscribed to workers' compensation insurance, that Lentz was an employee, and that he suffered a work-related injury, we affirm the trial court's judgment.

## I. Background

At the time of Lentz' injury in July 2015, MOC was a family-owned, independent oil and gas exploration and production company headquartered in Tyler. Lentz testified that he began working for MOC as a pumper in West Texas in October 2008 and was later promoted to production foreman. In 2015, Lentz was the production foreman for approximately 120 MOC wells. Lentz testified that his boss at MOC was Barrett Smith, a senior production engineer, and that Smith was his boss for the eight years he worked for MOC.

---

[1] Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to this Court by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] Other named plaintiffs, and appellants in this Court, include Beverly Lentz, Jason Lentz, M.D., and Rebecca Vanlandingham.

In July 2015, Lentz was working on the McElroy Ranch, where MOC operated several wells. Most of those wells were experiencing issues with paraffin buildup. MOC was working on one well in particular[3] and was utilizing a new procedure called a vapor treatment to clear paraffin from the well. When the treatment appeared to be working at the wellhead, Smith wondered aloud if it was likewise working at the tank battery. At that point, Lentz got in his truck and drove to the tank battery. As Lentz was in the process of attempting to check the connecting valve at the tank battery, it blew off and "there was fire everywhere." Lentz testified that he did not remember anything after he arrived at the emergency room until December of that year.[4]

Thereafter, Lentz sued MOC, Mewbourne Holdings, and others[5] for their negligence in causing the explosion and his resulting injuries. MOC and Mewbourne Holdings affirmatively pled entitlement to the protection of the TWCA's exclusive remedy provision. *See* TEX. LABOR CODE ANN. § 408.001(a). They further claimed that because Lentz had been paid worker's compensation benefits from MOC's workers' compensation carrier, they were entitled to summary judgment on their affirmative defense of quasi-estoppel. Based on these affirmative defenses, MOC and Mewbourne Holdings filed traditional and no-evidence motions for summary judgment, in which they alleged that both MOC and Mewbourne Holdings were Lentz' employers and that

---

[3]Lentz explained that paraffin is a bi-product of hydrocarbons and that it will sometimes build up inside the well and turn into a hard substance. If it is not managed, the paraffin can damage downhole equipment and flowlines.

[4]Lentz received second- and third-degree burns over seventy percent of his body and is now blind in both eyes.

[5]Lentz also sued Panther Completion Services, LLC, Jeremy Williamson, Marceaux Energy Services, LLC, Sandy Marceaux, Green Mountain Services, LLC, Brenntag Southwest, Inc., Corportivo Quimico Global, Jonathan Jurado, Cactus Equipment Rental, LLC, Roydston V. House, Arron Mangum, Organic Solvent Steam Treatment, and Nova Training, Inc. d/b/a Nova Safety & Environmental. Following the trial court's grant of summary judgment, Lentz' claims against MOC and Mewbourne Holdings were severed from Lentz' remaining claims.

Lentz' claims against them were barred under the exclusivity provision of the TWCA. *See id.* The trial court granted summary judgment in favor of MOC and Mewbourne Holdings.

On appeal, Lentz claims that the trial court erred in granting summary judgment in favor of MOC, because he was not an employee of that entity.[6] He, therefore, claims that MOC was not entitled to the protection of the TWCA's exclusive remedy provision. Lentz affirmatively claims that he was employed solely by Mewbourne Holdings. Finally, Lentz claims that his acceptance of worker's compensation benefits does not estop him from denying that MOC was his employer.

## II.     MOC Proved its Entitlement to Summary Judgment as a Matter of Law

### A.     Summary Judgment Standard of Review

We review an order granting a traditional motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Miers v. Tex. A&M Univ. Sys. Health Sci. Ctr.*, 311 S.W.3d 577, 578 (Tex. App.—Waco 2009, no pet.). In our review, we deem as true all evidence which is favorable to the nonmovant, indulge every reasonable inference to be drawn from the evidence, and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

---

[6]Lentz conceded in his summary judgment response that Mewbourne Holdings was his employer for purposes of the TWCA. In their response to the summary judgment motion in the trial court, the plaintiffs indicated that they no longer intended to pursue their claims against Mewbourne Holdings and, therefore, would not address the traditional and no-evidence challenges to their claims against Mewbourne Holdings. Additionally, the no-evidence motion for summary judgment concerned only Mewbourne Holdings. Because that claim is not at issue in this appeal, we apply the relevant standard of review for a traditional motion for summary judgment.

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A traditional summary judgment is proper when the defendant either negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When the defendant has carried its summary judgment burden, the burden shifts to the nonmovant to raise a material fact issue precluding summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). "A material fact issue is 'genuine' only if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party." *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11–12 (Tex. App.—Fort Worth 2002, no pet.) (citing *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

### B. Analysis

Under the TWCA, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX. LABOR CODE ANN. § 408.001(a). The exclusive remedy provision is an affirmative defense that, if proven, protects employers from negligence claims of their employees. *Rico v. Judson Lofts, Ltd.*, 404 S.W.3d 762, 765 (Tex. App.—San Antonio 2013, pet. denied). Consequently, an employer who proves TWCA subscriber status "is immune from liability for common-law negligence, and the employee's exclusive remedy lies within the

5

TWCA." *Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 186 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

On appeal, Lentz claims that MOC failed to prove as a matter of law its entitlement to the TWCA's exclusive remedy provision. To prevail on its affirmative defense, MOC was required to plead and prove that (1) Lentz was its employee at the time of the work-related injury and (2) MOC had workers' compensation insurance that covered claims asserted by Lentz. *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 476–77 (Tex. 2005); *Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 343 (Tex. App.—Houston [1st Dist.] 2011, no pet.). On appeal, Lentz challenges only his status as an employee of MOC.

The TWCA defines "employer" as "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." TEX. LAB. CODE ANN. § 401.011(18) (West 2015). Conversely, an "employee" is "each person in the service of another under a contract of hire, whether express or implied, or oral or written." TEX. LAB. CODE ANN. § 401.012(a) (West 2015).[7] In determining whether an individual is an employee, we look to

---

[7]The TWCA further defines "employee" to include

       (1)     an employee employed in the usual course and scope of the employer's business who is directed by the employer temporarily to perform services outside the usual course and scope of the employer's business;

       (2)     a person, other than an independent contractor or the employee of an independent contractor, who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer; and

       (3)     a person who is a trainee under the Texans Work program established under Chapter 308.

TEX. LAB. CODE ANN. § 401.012(b)(1)–(3) (West 2015).

traditional *indicia*, such as the exercise of actual control over the details of the work that led to the injury. *Garza*, 161 S.W.3d at 477. We review the summary judgment evidence with these concepts in mind.

### (1)  Summary Judgment Evidence

MOC supported its motion for summary judgment with evidence of its claim that it employed Lentz at the time of his injury. This evidence included Lentz' own deposition testimony that he worked for MOC for eight years and that Smith, a senior production engineer, was his boss. Lentz testified that in 2015, he was working as a production foreman in Midland and was responsible for approximately 120 MOC wells. In sworn responses to interrogatories, Lentz identified MOC in Midland as his employer on the accident date.

Smith testified that he began his employment with MOC in 2007. He was not familiar with Mewbourne Holdings and stated, "[W]e all work for Mewbourne Oil Company." Lyn Whetstone, vice president of operations for MOC, testified that he oversees the drilling, completion, production, and marketing aspects of MOC. As such, Whetstone stated that approximately 250 to 300 employees report to him or to different levels under him. Whetsone testified that he reported to Ken Waits, the president and chief executive officer of MOC, and that Lentz was an employee of MOC. Whetstone did not believe that Mewbourne Holdings had any employees.

Shawn Ray, a human resources representative for MOC, testified that he was employed by MOC and has never worked for Mewbourne Holdings. Ray was involved in helping Lentz file his worker's compensation claim and testified that Lentz was employed by MOC. Although Mewbourne Holdings is listed as the named insured on the worker's compensation policy, Ray

does not believe that Mewbourne Holdings has any employees. He testified, conversely, that MOC has approximately 420 employees. Ray stated that Smith managed MOC's West Texas Midland office and that Lentz was a production foreman for MOC with supervisory authority over other MOC employees.

D. Drew Greene, the general manager of administration for MOC, testified by affidavit that "MOC is a wholly owned indirect subsidiary of Mewbourne Holdings. Mewbourne Holdings is a privately-owned [sic], Texas corporation. Mewbourne Holdings serves as the parent company for a number of directly or indirectly wholly owned subsidiaries, including MOC." Green further testified, "At the time he was injured on July 23, 2015, Mr. Lentz was an employee of MOC. Mr. Lentz started working as a pumper for MOC in West Texas in October 2008. He was later promoted to production foreman. Mr. Lentz was never an employee of Mewbourne Holdings."

Greene further testified in his deposition that "Mewbourne Holdings is a passive holding company. They have no control over any of the activities [of MOC]." According to Greene, Mewbourne Holdings has no employees other than its officers and directors. Greene testified that Lentz was an employee of MOC as a production foreman and that MOC paid the workers' compensation insurance premiums to Starr Indemnity & Liability Company—MOC's workers' compensation insurance carrier—because it was the only entity with a payroll and it was the only employer. Green explained that the Employer's Wage Statement submitted to Starr Indemnity incorrectly listed Mewbourne Holdings, Inc., as Lentz' employer. Greene testified that MOC's payroll clerk who submitted the wage statement was responsible for that error. In October 2017,

8

Green submitted an amended Employer's Wage Statement to Starr Indemnity, correcting the mistake by listing MOC as Lentz' employer.

Waits, the president and chief executive officer of MOC and the president and chief executive officer of Mewbourne Holdings, testified that he is "generally aware that MOC and Mewbourne Holdings have a workers' compensation insurance policy" and that "Mr. Lentz has received benefits under the workers' compensation policy as an employee of MOC." Waits further testified that at the time of the accident, "district safety in that area was the responsibility of the MOC West Texas Operations Manager, Barrett Smith."

In his affidavit attached to MOC and Mewbourne Holdings' motion for summary judgment, Les Lappe, the assistant vice president of Starr Indemnity & Liability Company, testified that the workers' compensation and employer's liability insurance policy listed Mewbourne Holdings, Inc., as the named insured. However, the policy's "Named Insured Schedule" identifies additional entities included for coverage. The Named Insured Schedule confirms that MOC is a named insured under the policy. According to Lappe, "Mewbourne Holdings, Inc. is a subscriber and insured under the Policy without regard to whether it has any employees. Further, the number of employees of Mewbourne Holdings, Inc., if any, does not impact the validity of the Policy as to Mewbourne Oil Company." Lappe further testified that following Lentz' injury on July 23, 2015, he submitted a claim under the policy, and as of July 2017, Lentz had received benefits under the policy totaling $3,999,231.13.

In addition to the foregoing evidence, MOC submitted documentary evidence in support of its summary judgment motion. That evidence included Lentz' October 17, 2008, application

9

for employment, which listed "Mewbourne Oil Company" on the top of the application. The application contained questions regarding relatives employed by MOC and the source of Lentz' referral to MOC. The applicant's certification indicates that Lentz authorized MOC to investigate all statements contained in the application. Lentz also agreed, by his signature on the employment application, to abide by MOC rules and regulations and acknowledged that he understood that MOC reserved "the right to change wages, hours and working conditions as deemed necessary." Lentz' W-2 Wage and Tax Statement for the years 2014, 2015, and 2016 all list the employer's name, address, and zip code as "Mewbourne Oil Company, 3901 S. Broadway Ave., Tyler, TX 75701-8716." Lentz' personnel file was labeled "Mewbourne Oil Company Personnel Jacket," and that file included Lentz' employment record with MOC. Lentz signed a written acknowledgment of receipt of MOC's drug and alcohol policy. Additionally, the employee authorization agreement for direct deposit of Lentz' paycheck listed his employer as MOC, as did Lentz' written acknowledgment of having been provided a copy of the rules governing use of his assigned company vehicle and his enrollment form for the MOC 401(k) plan.

Additional summary judgment evidence indicates that following the accident, the Occupational Safety and Health Review Commission entered into a settlement agreement with MOC. An order approving the settlement agreement was issued in the case against MOC.[8] The settlement agreement was signed by Frank D. Davis, attorney for respondent Mewbourne Oil Company, Inc.

---

[8]The case was styled, *Thomas E. Perez, Secretary of Labor, United States Department of Labor, Complainant v. Mewbourne Oil Co. and its Successors*, OSHRC Docket Number 16-0455, relative to inspection number 1079925.

10

The summary judgment evidence also includes a March 2016 letter from MOC to Lentz outlining additional payments to Lentz to maintain his post-accident salary at 100 percent of his pre-accident salary, its agreement to pay the premiums for the eighteen-month COBRA coverage period, and for extended medical insurance benefits for Lentz and his wife. The letter was signed "Sincerely, Mewbourne Oil Company, Gilbert R. Hearn, Human Resources." MOC issued a separation report for Lentz on July 23, 2016, based on Lentz' long-term disability. The form was signed as "approved" by Greene. The employer statement portion of Lentz' disability claim form identified the employer as MOC. On July 29, 2016, MOC sent Lentz a letter of employment separation, explaining Lentz' "separation of full time employment from Mewbourne Oil Company" and corresponding benefits. The letter bore the same signature as the earlier March letter.

Despite this evidence, Lentz contends that Mewbourne Holdings was his sole employer. In support of that contention, Lentz submitted summary judgment evidence which included his affidavit. In that affidavit, Lentz testified that he had "no knowledge of whether [he] was employed by [MOC] other than what other people have told [him], what appears on [his] direct deposit statements, and [his] IRS Form W-2. [He has] always assumed [he] was employed by [MOC] . . . . But [he has] no way of knowing whether any other company might have claimed [him] as an employee." Lentz further stated that his workers' compensation benefits' checks list Mewbourne Holdings as the insured.

Beyond his affidavit, Lentz primarily relies on documents issued either by Starr Indemnity or some other third party in support of his claim that Mewbourne Holdings was his sole employer.

11

For example, Lentz relies on Workers' Compensation and Employers' Liability Policy Number 1000001218 issued by Starr Indemnity, which lists Mewbourne Holdings, Inc., 3901 S. Broadway, Tyler, Texas, as the named insured. MOC, however, is listed as an additional named insured on the policy, together with additional companies, partnerships, and trusts.[9]

In addition to the Starr Indemnity policy, Lentz relies on The Starr Companies Loss Control Site Survey Evaluation, which states, under the operational overview section, "Mewbourne Holdings, DBA: Mewbourne Oil Company is an oil and gas service company that has been in operation for approximately 50 years . . . . There are a total of 400 employees . . . . A specific breakdown by title, location and other information was not available." The account name is listed as Mewbourne Holdings. Additionally, a Starr Indemnity audit of its workers' compensation payroll performed by a third-party auditor identified Mewbourne Holdings, Inc., as the name of the insured. The auditor's "Description of Operations" states that the "insured owns several other corporations, trusts, and LLC's[;] these companies do not have any employees." Starr Indemnity's consolidated premium audit invoice also listed Mewbourne Holdings, Inc., as the insured. Further, the Texas Department of Insurance Workers' Compensation Division sent its "Notice To Employer" to "Mewbourne Holdings Inc" on December 1, 2015. Finally, Lentz relies on a wage statement submitted to Starr Indemnity listing Mewbourne Holdings as his employer.[10]

---

[9]MOC's address on the policy is the same as the one listed for Mewbourne Holdings in Tyler. The only address listed for a Midland location on the policy's additional location schedule is one for Mewbourne Holdings.

[10]Green testified that this wage statement incorrectly listed Mewbourne Holdings, Inc., as Lentz' employer and that the error has since been corrected.

### 2. Lentz Was Employed by MOC on the Accident Date and Was Subject to its Control

"For the purpose of workers' compensation law, the employer-employee relationship may be created only by a contract." *Waldrep v. Tex. Employers Ins. Ass'n*, 21 S.W.3d 692, 698 (Tex. App.—Austin 2000, pet. denied) (citing *United States Fid. & Guar. Co. v. Goodson*, 568 S.W.2d 443, 445–46 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.)). MOC presented substantial evidence that (1) there was a contract of hire between it and Lentz, (2) MOC employs one or more employees, and (3) MOC has workers' compensation insurance coverage. *See* TEX. LABOR CODE ANN. §§ 401.011(18), 401.012(a). The summary judgment evidence established not only that Lentz was employed by MOC on the accident date, but also that MOC had the right to control Lentz on that date. *See Producers Chem. Co. v. McKay*, 336 S.W.2d 220, 226 (Tex. 1963).

MOC produced the following evidence to establish that it employed Lentz on the accident date and that Lentz was subject to its control: (1) Lentz' employment application was to MOC, in which he agreed to "conform to all existing and future Company rules and regulations" and "underst[oo]d that [MOC] reserves the right to change wages, hours and working conditions as deemed necessary"; (2) MOC's personnel file on Lentz was marked "Mewbourne Oil Company"; Lentz' sworn response to interrogatories that he worked for MOC; (4) Lentz' deposition testimony that at the time of the accident, he was a production foreman for "Mewbourne Oil" and was "assigned to all the wells that [MOC] had in the West Texas Area"; (5) Lentz' deposition testimony that Smith was his boss at MOC and that Smith was at the wellsite on the accident date; (6) the accident occurred on an MOC well; (7) Lentz' deposition testimony that he was checking on the tank battery at the time of the accident in response to Smith's question regarding what was

13

happening there; (8) MOC paid Lentz' salary; (9) MOC provided Lentz with a company vehicle; (10) MOC provided Lentz with a 401(k) plan; (11) Lentz signed a written acknowledgement of MOC's drug and alcohol policies; (12) following the accident, MOC continued to pay Lentz additional payments to keep his salary at 100 percent of his pre-accident salary; (13) MOC's provision of COBRA coverage to Lentz following the accident; and (14) MOC's letters to Lentz in March and July 2016, the latter of which advised Lentz of his separation of employment from MOC. The summary judgment evidence also established that MOC was a named insured on the Starr Indemnity policy, that MOC paid the premiums on the policy, and that MOC employed 420 people.

Because the foregoing evidence conclusively established that MOC was Lentz' employer on the accident date and that Lentz was subject to its control, the burden shifted to Lentz to raise a material fact issue precluding summary judgment. *See Walker*, 924 S.W.2d at 377.

Lentz attempted to carry this burden by claiming that (1) "The Mewbourne companies' arrangement categorizing all workers as employees of Mewbourne Holdings is a relevant factor in determining the identity of Lentz'[] statutory employer," (2) Mewbourne Holdings had the right to control Lentz and direct his activities at the time of the accident, and (3) the fact that MOC administered some of the formalities of Lentz' employment on Mewbourne Holdings' behalf does not conclusively establish MOC was his employer. Lentz' arguments and supporting evidence fall short of creating a genuine issue of material fact.

14

### 3. No Evidence of a Written or Implied Contract Between MOC and Mewbourne Holdings

Lentz claims that an "arrangement" between Mewbourne Holdings and MOC indicates that he was solely employed by Mewbourne Holdings because the evidence shows that "all workers in the Mewbourne family are employees of Mewbourne Holdings, and MOC has no employees of its own." Lentz therefore claims that any conflict between the "arrangement" between Mewbourne Holdings and MOC versus the facts on the ground is a genuine issue of fact that should be left to the jury.

In support of his claim that the record includes evidence of such an arrangement, and thereby raises a genuine issue of material fact precluding summary judgment, Lentz relies on *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992), *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963), and *Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433 (Tex. App.—San Antonio 2001, pet. denied). *Perez* involved a written contract between Perez' employer and Exxon and held that factors beyond the four corners of a contract may be considered when the contract does not accurately reflect the true legal relationship of the parties. *Perez*, 842 S.W.2d at 630. In *Producers Chemical Co.*, the high court determined, "A contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling." *Id.* (citing *Producers Chem. Co.*, 366 S.W.2d at 226). *Alice Leasing* relied on *Producers Chemical Co.* for the proposition that "[g]enerally, the right of control and direction is a question of contract between the general employer and the special employer." *Alice Leasing Corp.*, 53 S.W.3d at 440 (citing *Producers Chem. Co.*, 366 S.W.2d at 226). When there is "conflicting evidence as to which entity" has the right of control, "assignment[s] of the

15

right to control" are relevant factors in the determination of which entity is the employer. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 544 n.92 (Tex. 2002). However, "when no written contract between the parties delineates the right of control, it must necessarily be determined from the facts and circumstances of the project." *Alice Leasing Corp.*, 53 S.W.3d at 440 (citing *Producers Chem. Co.*, 366 S.W.2d at 226). Stated differently, when the right of control is not expressed in a written agreement, the right of control is determined from the facts and circumstances of the work. *Phillips*, 316 S.W.3d at 187.

It is undisputed that there is no written contract between Mewbourne Holdings and MOC delineating the right of control over Lentz. Moreover, the summary judgment evidence on which Lentz relies does not establish an implied contract over the right of control. *See Producers Chem. Co.*, 366 S.W.2d at 226. Lentz relies strongly on the "DBA" reference to MOC in Starr Indemnity's loss control site survey evaluation in support of his assertion that there was an arrangement between Mewbourne Holdings and MOC that Holdings was the sole employer. The operational overview section of the evaluation states, "Mewbourne Holdings, DBA: Mewbourne Oil Company is an oil and gas service company that has been in operation for approximately 50 years . . . . There are a total of 400 employees." This document was prepared by a third-party underwriter for insurance purposes. It does not speak to the existence of an implied contract between Mewbourne Holdings and MOC regarding the right of employee control.[11] Indeed, Lappe testified that Starr Indemnity does not have personal knowledge or information to comment on

---

[11]A witness from Starr Indemnity testified that the purpose of the evaluation was to ensure that proper safety protocols and procedures were in place.

16

which entity—Mewbourne Holdings or MOC—had the right to control Lentz at the time he was injured. Moreover, the bare "DBA" reference by a third-party layperson is not competent evidence of corporate structure. *See, e.g.*, *Arsenault v. Orthopedics Specialist of Texarkana*, No. 06-07-00022-CV, 2007 WL 3353730, at *3 (Tex. App.—Texarkana Nov. 14, 2007, no pet.) (mem. op.) ("Lowrance's conclusory allegations—that Young and OST are alter egos, a single business enterprise, 'd/b/a' as each other, or 'of' the other—in his petition, amended petition, and affidavit do not suffice.").

Likewise, the Starr Indemnity policy listing Mewbourne Holdings as the named insured, payroll audits performed by a third-party auditor in connection with obtaining workers' compensation insurance identifying the insured as Mewbourne Holdings, and Lentz' affidavit indicating that he did not know if Mewbourne Holdings claimed him as an employee do not support the existence of an implied contract between Mewbourne Holdings and MOC regarding the right of employee control. The summary judgment evidence established that MOC was a named insured under the policy and that it paid its own premiums. As Lappe explained in his deposition, Starr Indemnity placed the name of the first-listed insured in the forms requiring an employer name so that it did not have to list multiple insureds in every form. Lappe testified that this designation "did not suggest any legal ownership or control by Mewbourne Holdings as to any of those other locations."

The third-party audit report, created by York Premium Audit Services, does not advance Lentz' argument. York created a document that contains payroll data. On the first page, a column

17

entitled "Insured Information" lists Mewbourne Holdings. The remainder of the document likewise refers to Mewbourne Holdings as the insured. The second page of the audit states,

> Mewbourne Holdings, Inc.[,] has several locations throught [sic] Texas, Oklahoma, and New Mexico. There are not any operations in any other states. The main offices are located at 3901 S. Broadway, Tyler, TX 75701. There were no changes in ownership or entity type during the audit period. Insured owns several other corporations, trusts, and LLC's. These companies do not have any employees.

There is no evidence the third-party auditor had any personal knowledge about Mewbourne Holdings or MOC's corporate structure. Moreover, the audit report is silent about MOC. Conversely, the summary judgment evidence from MOC's general manager of administration specifically addressed the relationship between Mewbourne Holdings and MOC. Greene testified that Mewbourne Holdings did not have employees and was merely a passive holding company[12] with no control over any of MOC's activities. Mewbourne Holdings is a parent company for several directly or indirectly wholly owned subsidiaries, including MOC.

None of the evidence on which Lentz relies is sufficient to raise a genuine issue of material fact regarding MOC's employment of Lentz on the accident date.[13] *See Rayon*, 121 S.W.3d at 11 ("A material fact issue is 'genuine' only if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party.").

---

[12]A "holding company" is "[a] company formed to control other companies . . . confining its role to owning stock and supervising management. It does not participate in making day-to-day business decisions in those companies." *Holding Company*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[13]Because the sole issue before this Court is whether Lentz was employed by MOC on the accident date such that it is entitled to rely on the TWCA's exclusive remedy provision, we need not reach the issue of whether Lentz was likewise employed by Mewbourne Holdings. *See Port Elevator-Brownsville v. Casados, L.L.C.*, 358 S.W.3d 238, 242 (Tex. 2012) ("An employee may have more than one employer within the meaning of the TWCA.").

18

## III.    Conclusion

The summary judgment evidence conclusively established that on the date of the incident, MOC was Lentz' employer and had the right to control Lentz. It is undisputed that MOC subscribed to a workers' compensation policy issued by Starr Indemnity and that Lentz received workers' compensation benefits under the policy. MOC was therefore entitled to summary judgment based on the exclusive remedy defense under the TWCA.[14]

We affirm the trial court's judgment.

                            Bailey C. Moseley
                            Justice

Date Submitted:      September 4, 2018
Date Decided:        October 29, 2018

---

[14]Having concluded that MOC is entitled to summary judgment on its affirmative defense, we need not address MOC's quasi-estoppel argument.